UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIDGET POWELL-KIRBY,

    Plaintiff,

v.

Case No. 1:12-CV-132

HON. GORDON J. QUIST

SPECTRUM HEALTH,

    Defendant.
_____/

## OPINION REGARDING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Plaintiff, Bridget Powell-Kirby, brought this claim against Defendant, Spectrum Health, for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging Defendant terminated her employment because she filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (EEOC). Defendant has moved for summary judgment.[1] For the reasons set forth below, the Court will grant Defendant's motion.

### I. FACTS[2]

Defendant hired Plaintiff in 2004 as a Health Information Management 2 Technician. Plaintiff worked in that capacity until Defendant terminated Plaintiff on June 29, 2010. It is undisputed that Plaintiff has a history of employee discipline, beginning during Plaintiff's initial probationary period, which Defendant extended for two months due to Plaintiff's attendance record. Over the next several years, Plaintiff was disciplined at least four times regarding her performance,

---

[1]The operative document is Defendant's Amended Motion for Summary Judgment (docket no. 31).

[2]The following facts are taken from Plaintiff's Complaint and Defendant's Exhibits 1–17. (*See* Docket nos. 1 & 27–31.)

including continued attendance problems, inappropriate computer use, excessive breaks, and interactions with coworkers that "contributed to an uncomfortable and hostile work environment." (Def.'s Br. Supp. Summ. J., Exs. 5–8, Docket no. 27-5.) On January 2, 2009, Plaintiff received her third "Corrective Action Counseling Report" (Corrective Action), a written form of discipline accompanied by a meeting with Plaintiff's supervisors, for sleeping at her work station and leaving work early without authorization. (*Id.* at Ex. 9.) In her employee comment in response to the Corrective Action, Plaintiff stated that she was briefly resting her head in her hands to clear her vision due to a migraine, not sleeping. (*Id.*) Plaintiff does not deny that she was leaving work early. On March 24, 2009, Plaintiff received a fourth Corrective Action for absenteeism. (*Id.* at Ex. 10.)

On February 9, 2010, Plaintiff filed a Charge of Discrimination with the EEOC, alleging race-based discrimination by her supervisors. (*Id.* at Ex. 1, pages 110–13.) The parties agree that Plaintiff did not personally inform anyone at Spectrum Health that she had filed an EEOC Charge, but Defendant was notified of Plaintiff's Charge as a matter of procedure. The parties dispute *which employees* of Spectrum Health were aware of the Charge. On March 11, 2010, Plaintiff received a fifth Corrective Action for inappropriate interactions with coworkers in violation of Spectrum Health's Rules of Engagement, and was placed on a three-day involuntary leave to consider "whether or not she wishes to return to her job with full adherence" to Defendant's policies. (*Id.* at Ex. 11.)

In April 2010, Plaintiff received disciplinary coaching, associated with her prior involuntary leave. The coach noted that Plaintiff consistently left work before the end of her shift, walked out of a meeting without permission, and had been reported by coworkers for disregarding work flow distribution directions. (*Id.* at Ex. 13; *see also id.* at Ex. 1 at 90–91.) Plaintiff was informed that

continued absenteeism or disregarding work flow distribution could result in termination. (*Id.* at Ex. 13.)

On June 25, 2010, Plaintiff's received her 2009–2010 Performance Management Process Review, which indicated a comprehensive score of 1.71 (on a scale on which 4.0 was the highest score), with the lowest scores in the areas of collaboration, communication, core values, diversity, ownership and accountability, and professionalism. (*Id.* at Ex. 14.) In the comment area, supervisors noted Plaintiff's history of corrective action, including failure to follow work distribution directions, failure to focus on her responsibilities throughout her shift, contribution to a negative work environment, and shutting down her computer up to 30 minutes prior to the end of her shift. Supervisors did, however, note that Plaintiff's "behavior had improved" since her involuntary leave, and the overall atmosphere in her office had become "more relaxed." (*Id.*) According to Defendants, it is Spectrum Health's policy to require employees to sign their annual performance reviews to acknowledge that employees have received their reviews by the deadline required by the Joint Commission on the Accreditation of Health Care Organizations. (*See* McKee Decl., *id.* at Ex. 15.) It is undisputed that Plaintiff refused to sign her review. It is also undisputed that Plaintiff was given an opportunity to take the review home over the weekend before bringing it back signed. On June 29, 2010, Plaintiff's supervisors informed her that her signature was only an acknowledgment that she had received the review, not that she agreed it. (*Id.* at Ex. 1, pages 120–29.) Plaintiff was also offered a chance to sign an alternative piece of paper acknowledging her receipt of her review instead of signing the review itself. (*Id.* at 126–27.) However, Plaintiff refused to do so. The parties agree that Plaintiff was informed at the June 29, 2010, meeting that

if she refused to sign her review, her refusal would be interpreted as a voluntary resignation. (*Id.* at 129.) Plaintiff refused to sign her review and Defendant terminated Plaintiff's employment. (*Id.*)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

In deciding a motion for summary judgment, the court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

## III. DISCUSSION

Read indulgently, Plaintiff's one-count Complaint alleges that Defendant took two retaliatory actions against Plaintiff as a result of Plaintiff's filing an EEOC Charge: (1) a March 2010 involuntary three-day leave, and (2) termination of employment on June 29, 2010.[3] Defendants dispute that either action was causally related to Plaintiff's EEOC complaint.

---

[3] Although the strong majority of the parties' argumentation focuses on Plaintiff's termination, the Court finds that the Complaint, read indulgently, may also state a claim for retaliation by suspending Plaintiff in March 2010, so the Court will also address it.

4

## A. Title VII Anti-retaliation Standard

Title VII's anti-retaliation provision prohibits retaliation when an employee "oppos[es] any practice made an unlawful employment practice by [Title VII]" or "has made a charge, testified, assisted in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). Plaintiff's retaliation claim is premised upon her filing of a Charge made for race-based discrimination, made unlawful by Title VII. *Id.* § 2000e-2(a).

In evaluating retaliation claims based on circumstantial evidence, a court applies the *McDonnell Douglas* burden-shifting framework. *See Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003). To establish a prima facie case of retaliation, a plaintiff must show that: (1) she engaged in protected activity; (2) the employer was aware of plaintiff's protected activity; (3) she suffered an adverse employment action; and (4) there is a causal connection between the protected activity and the adverse employment action. *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 562–63 (6th Cir. 2004). A plaintiff "need not prove [her] prima facie case by a preponderance of the evidence" at the summary judgment stage. *Id.* Rather, "at the summary judgment stage in retaliation cases, the order of proof and shifting of burdens is viewed in light of the traditional summary judgment test." *Id.*

If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to "articulate a legitimate, non-retaliatory explanation for the action." *Id.* If the defendant meets its burden, the plaintiff must then demonstrate that the proffered reason was pretextual. *Id.* This entails a showing that the defendant's proffered reason: (1) has no basis in fact, (2) did not actually motivate the adverse action, or (3) was insufficient to motivate the adverse action. *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000). If a plaintiff can show that the defendant's

proffered, nondiscriminatory reason is pretextual, the trier of fact may infer discrimination. *Id.* "Nevertheless, the ultimate burden of proof to show discrimination remains on the plaintiff at all times." *Id.*

**B. Causal Connection**

In this case, Defendant only disputes one element of Plaintiff's prima facie case: whether there is a causal connection between Plaintiff's protected activity—filing an EEOC Charge of Discrimination—and Plaintiff's suspension or termination. In support of its argument, Defendant states that no Spectrum Health employee had direct communication with Plaintiff about her EEOC Charge, no one "expressed any anger or resentment," related to the EEOC Charge, and Plaintiff has offered "no evidence connecting her EEOC charge and her separation." (Def.'s Br. Supp. Summ. J., Docket no. 27, Page ID 100.)

In order to establish a causal connection, a plaintiff must "produce sufficient evidence from which an inference can be drawn" that a defendant took an adverse employment action because a plaintiff engaged in a protected activity. *Singfield*, 389 F.3d at 563. Courts commonly look to two factors to determine whether a causal connection exists: the temporal proximity and whether there were any intervening events. "In analyzing the facts in temporal proximity cases, we have always looked at the totality of the circumstances to determine whether an inference of retaliatory motive could be drawn." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010)). While temporal proximity is an indicator of a causal connection, the Sixth Circuit has repeatedly held that temporal proximity, without other evidence of retaliatory conduct, is generally insufficient to establish the required causal connection for a retaliation claim. *See, e.g.*, *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007); *McElroy v. Philips Med. Sys. N. Am., Inc.*, Nos. 03-

6219, 03-6351, 2005 WL 406335, at *10 (6th Cir. Feb. 18, 2005) (per curiam); *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000). Generally, "'temporal proximity, standing alone, is not enough to establish a causal connection for a retaliation claim,'" *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 472 (6th Cir. 2012) (quoting *Tuttle*, 474 F.3d at 321), but it may be enough when it "so closely follows the protected activity that there would be no other evidence to couple with the temporal proximity," *id.* (citing *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525–26 (6th Cir. 2008)). "[O]ur case law can fairly be characterized as recognizing the possibility that, on a particular set of facts, *extremely close temporal proximity* could permit an inference of retaliatory motive, but also recognizing that often evidence in addition to temporal proximity is required to permit the inference." *Vereecke*, 609 F.3d at 401 (emphasis added). An intervening "obviously nonretaliatory basis" for an adverse action is evidence negating temporal proximity. *Wasek*, 682 F.3d at 472 (quoting *Vereecke*, 609 F.3d at 401).

Here, Plaintiff's suspension occurred approximately one month after she filed her EEOC complaint,[4] and her termination was approximately four and one-half months later. The Court finds that while Plaintiff's suspension was in close proximity, it was not "extremely close," *Vereecke*, 609 F.3d at 401; *cf. Mickey*, 516 F.3d at 526, so Plaintiff must produce additional evidence sufficient to support an inference of retaliation. Likewise, because Plaintiff's termination was not in close proximity, Plaintiff must produce additional evidence on that claim.

In addition to temporal proximity, Plaintiff argues that proof that a plaintiff was disciplined even though other employees were not disciplined for the same behavior provides support for an

---

[4]Plaintiff filed her EEOC Charge of Discrimination on February 9, 2010. The record does not indicate which day Defendant was notified of Plaintiff's EEOC Charge. However, the parties agree that Defendant received routine notification of the Charge. Defendant placed Plaintiff on suspension on March 11, 2010, making the adverse action one month, or fewer, after Plaintiff's Charge.

inference of retaliation. Specifically, Plaintiff argues that no other employee was terminated for not signing his or her annual performance review. However, Plaintiff provides no evidence that any other employee refused to do so. Moreover, Defendant has presented a declaration from Christine McKee, Director of Team Relations/Senior Human Resources Business Partner for Spectrum Health, stating that she was "not aware of any other employee who refused to sign his or her 2009–2010 Performance Management Process and Review." (Ex. 15, Docket no. 30-1.) Therefore, Plaintiff has not produced sufficient evidence to support an inference of retaliation for purposes of her termination claim.

Looking to Plaintiff's deposition (Ex. 1, Docket no. 27-2), Plaintiff also states that she was placed on a "strict schedule" compared to other employees because she "could not leave [her] work area" and "everyone else could have moved around freely." However, the Court finds that allegation, even when combined with the relatively close temporal proximity, is insufficient to support an inference of retaliation. The record is replete with evidence that Plaintiff has a history of leaving her desk without permission, which shows that there was an "obviously non-retaliatory" reason for the restriction. Plaintiff does not argue that this disparate treatment began *after* she had filed her EEOC complaint. Plaintiff presents no other indicia of retaliatory conduct, *Vereecke*, 609 F. 3d at 401, to support her position that retaliatory intent may be inferred. Looking at the totality of the circumstances, the Court must conclude that no inference of retaliation can be drawn. Therefore, the Court finds that Plaintiff has failed to present a prima facie case of retaliation.

## C. Reason for Adverse Action and Pretext

Even if Plaintiff were able to establish a causal connection, Defendant has presented legitimate reasons for suspending and terminating Plaintiff. Plaintiff has a history of employee discipline, which Defendant has documented for several years. In support of Defendant's decision to place Plaintiff on involuntary leave in March 2010, Plaintiff's supervisors cited a specific incident during which Plaintiff violated Defendant's workplace Rules of Engagement, and Plaintiff's longer history of negative interactions with coworkers during the preceding year, which had contributed to a "negative work environment." (Ex. 11, Docket no. 29-2.) Regarding Plaintiff's termination, Defendant states that Plaintiff was terminated because she refused to acknowledge her receipt of her annual performance review by signature. Defendant also argues, at least implicitly, that the related reason that Plaintiff was fired when she refused to sign her performance review was that Plaintiff was a "poor employee with a long disciplinary history leading up to her separation." (Def.'s Br. Supp. Summ. J., Docket no. 27, Page ID 94.) Because Defendant has a legitimate business interest in having productive employees and a positive work environment, and Defendant is required to conduct annual performance reviews for purposes of accreditation, the Court finds that Defendant has articulated "a legitimate, non-retaliatory explanation" for each of the actions. *Singfield*, 389 F.3d at 563.

Therefore, the burden of production shifts back to Plaintiff to demonstrate that Defendant's proffered reason was pretextual. *Id.* To show a proffered explanation is pretextual, a plaintiff can either show that it has no basis in fact, did not actually motivate the adverse action, or was insufficient to motivate the adverse action. *Dews*, 231 F.3d at 1021. Here, Plaintiff argues that Defendant's reason for terminating Plaintiff—that she would not sign her review—did not actually

9

motivate the adverse action.[5,6] Plaintiff's central argument is that Plaintiff was not a poor employee, and, therefore, the termination must have been made in retaliation of Plaintiff's EEOC complaint. In support of this argument, Plaintiff cites her June 25, 2010, annual performance review, in which one of Plaintiff's supervisors noted Plaintiff's general improvement since her March 2010 suspension.

"Courts have recognized that in discrimination and retaliation cases, an employer's true motivations are particularly difficult to ascertain." *Singfield*, 389 F.3d at 564 (noting that discrimination cases present difficult issues for the trier of fact because there is rarely "'eyewitness testimony as to the employer's mental processes.'" (quoting *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716, 103 S. Ct. 1478, 1482 (1983)). Some courts of appeal have cautioned against granting summary judgment once the plaintiff has satisfied a prima facie case. *Id.* However, in this case, Plaintiff's speculative arguments are insufficient to survive a motion for summary judgment. After careful review of the record, and viewing the evidence in the light most favorable to Plaintiff, the Court concludes that Plaintiff's argument that Plaintiff was terminated

---

[5]Plaintiff does not provide any argument for why Defendant's March 2010 suspension of Plaintiff was pretextual. Therefore, any argument that Plaintiff may have made that Plaintiff's suspension was made in retaliation of Plaintiff's filing of an EEOC complaint must fail at this stage.

[6]In support of her argument that Defendant's proffered reason for termination was pretextual, Plaintiff argues that Defendant should have offered Plaintiff alternative methods to acknowledge her annual performance review. Specifically, Plaintiff cites an online "Employee Performance Management System Training" module to support that there are multiple methods of compliance. (Ex. 7, Docket no. 32-8.) Plaintiff's argument is unpersuasive. First, Defendant has offered evidence that it is Spectrum Health's policy to require employees to sign their annual performance reviews in order to demonstrate compliance with the Joint Commission on the Accreditation of Health Care Organization's standards. Second, Plaintiff offers no evidence that Defendant is not entitled to require, as a matter of internal policy, that employees acknowledge receipt of their performance reviews by signature. Third, Plaintiff provides no foundational information explaining how the online module relates to Defendant's or the Joint Commission's policy. Fourth, even if it were relevant to Defendant's policy, the module states that, "[i]f an employee refuses to sign the evaluation document, the supervisor *should consider*," followed by three bulletpoints suggesting alternative options. (*Id.* (emphasis added)). The third option is that a supervisor offer to have the employee sign a statement that the employee received the evaluation but does not agree with the overall rating. This is what occurred in this case.

because of her EEOC Charge—and not because she had a poor disciplinary record and refused to sign her annual performance review—is not supported by the evidence. Here, "[t]he record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp.*, 967 F.2d at 236. Therefore, the Court must grant Defendant's Motion for Summary Judgment.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment (docket no. 31) and dismiss Plaintiff's Complaint.

An Order consistent with this Opinion will be entered.


Dated: January 30, 2013  /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE